Andrew M. Calamari
Sanjay Wadhwa
Gerald A. Gross
Sheldon Mui
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0138 (Mui)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 16 Civ. ( ) |
| Plaintiff, | |
| -against- | COMPLAINT |
| COLIN WHELEHAN and SHEREN TSAI, | ECF CASE |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Colin Whelehan ("Whelehan") and Sheren Tsai ("Tsai") (together, "Defendants"), alleges as follows:

## SUMMARY

1. Whelehan and Tsai committed insider trading in the securities of ADT Corp. ("ADT") in advance of the February 16, 2016 announcement that certain funds managed by affiliates of Apollo Global Management,L LC ("Apollo") would acquire ADT for $42.00 per share ("Announcement").

2. On December 17, 2015, Apollo approached the advisory firm that employed Whelehan ("Investment Adviser A") to inquire whether Investment Adviser A's corporate

parent, a sovereign wealth fund, would make an equity investment in funds advised by Apollo so that one of its portfolio companies could acquire ADT. Investment Adviser A, which provided investment advice to the sovereign wealth fund, learned this material, nonpublic information from Apollo pursuant to a non-disclosure agreement ("NDA").

3. Beginning on or around December 18, 2015, Whelehan misappropriated from Investment Adviser A the material, nonpublic information about Apollo's affiliates' planned acquisition of ADT. Whelehan knew that this information had been provided by Apollo to Investment Adviser A pursuant to an NDA; that it was highly confidential; and that he was prohibited from communicating it to anyone outside of work. In breach of a duty to his employer, however, Whelehan tipped his girlfriend, Tsai, about Apollo's planned acquisition of ADT.

4. Based on the information that she received from Whelehan, on January 22, 2016, Tsai purchased 1,500 shares of ADT stock at $29.00 per share.

5. Tsai also recommended to a close relative to purchase ADT stock. Thereafter, on January 22, 2016, the close relative purchased 343 shares of ADT stock at $29.13 per share.

6. On February 16, 2016, Apollo announced that its affiliates would acquire ADT for $42.00 per share. After the Announcement, ADT's stock price increased $12.77 per share to $39.64 per share, an increase of 48 percent from the previous trading day's closing price of $26.87 per share.

7. Defendants' insider trading scheme resulted in Tsai and her close relative generating illicit profits of approximately $19,500.00 and $4,414.41, respectively.

8. By knowingly or recklessly engaging in the conduct described in this Complaint, the Defendants violated and, unless restrained and enjoined by the Court, will continue to violate

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking a final judgment: (a) permanently restraining and enjoining Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (b) requiring Tsai to disgorge all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest; and (c) imposing civil penalties on Defendants pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11. Venue is proper in the Southern District of New York pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendants may be found in, or are inhabitants of, or transact business in this district, and certain of the transactions, acts, practices, and courses of business alleged in this Complaint occurred within the Southern District of New York. As examples,duri ng the relevant period, Whelehan and Tsai resided in Manhattan, and the unlawful trading was executed on the New York Stock Exchange in New York, New York.

12. Defendants, directly or indirectly, used means or instrumentalities of interstate commerce, or the mails, and/or the facilities of a national securities exchange.

## DEFENDANTS

13. **Whelehan**, age 26, is a resident of New York, New York. Between November 2014 and March 2016, he was employed as a Senior Associate at Investment Adviser A in New York, New York. Before working at Investment Adviser A, Whelehan was a registered representative associated with a registered broker-dealer ("Broker-Dealer A") between June 2012 and June 2014, and he held Series 63 and 79 securities licenses. He received his undergraduate degree from Harvard University in May 2012. At all relevant times, Whelehan resided in a Manhattan apartment with his girlfriend, Tsai.

14. **Tsai**, age 27, is a resident of New York, New York. Between July 2014 and February 2016, she was employed as an associate by an investment adviser registered with the Commission ("Investment Adviser B") in New York, New York. Before working at Investment Adviser B, Tsai was a registered representative associated with Broker-Dealer A between July 2011 and June 2014, and she held Series 63 and 79 securities licenses. She received her undergraduate degree from New York University in May 2011.

## RELEVANT ENTITIES

15. **ADT** is a Delaware corporation with its principal place of business in Boca Raton, Florida. ADT provides monitored security, interactive home and business automation and related monitoring services in the United States and Canada. Its common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l] and was traded on the New York Stock Exchange.

16. **Apollo**, a Delaware corporation with its principal place of business in New York City, New York, is an investment adviser registered with the Commission.

## FACTUAL ALLEGATIONS

**Background**

17. Between June 2012 and June 2014, Whelehan and Tsai worked at Broker-Dealer A. During this time, they became romantically involved, and in October 2014, they began living together in a Manhattan apartment. In June 2014, they both left Broker-Dealer A, and, thereafter, Whelehan worked at Investment Adviser A and Tsai worked at Investment Adviser B.

**Whelehan Obtained Confidential Information About Apollo's Planned ADT Acquisition.**

18. On December 17, 2015, Apollo approached Investment Adviser A about its corporate parent making an equity investment in funds advised by Apollo so that one of its portfolio companies could acquire ADT. Once Investment Adviser A agreed to consider this transaction, Apollo and Investment Adviser A executed an NDA related to the planned ADT acquisition. On December 21, 2015, Investment Adviser A signed and returned the NDA to Apollo and received access to Apollo's dataroom, which contained confidential documentation pertaining to this acquisition.

19. Investment Adviser A performed due diligence on the ADT transaction between December 21, 2015 and the Announcement. During this time, Investment Adviser A's deal team, which included Whelehan, met numerous times with Apollo and its advisers to discuss the transaction and to conduct due diligence. On January 5 and 7, 2016, Whelehan and others at Investment Adviser A met with Apollo staff to discuss the planned acquisition.

20. As of December 21, 2015, Whelehan also had full access to Apollo's dataroom, which included management presentations for Apollo, Apollo's internal financial models, Investment Adviser A's internal business analysis models, the approximate acquisition price, and presentations for Investment Adviser A's corporate parent.

21. Whelehan understood that the information about Apollo's affiliates' acquisition of ADT was highly confidential and that he was prohibited from misusing this information, by among other things, communicating it to anyone outside of work. As part of his employment, Whelehan had agreed not to disclose any such information. He was subject to Investment Adviser A's compliance policies which, in part, stated: "[e]mployee has a duty to preserve and protect the security and confidentiality of Classified Information in his/her knowledge, possession, or control and shall be aware of his/her obligation of confidentiality as set out in the terms of his/her employment and/or engagement." Investment Adviser A's compliance policies further state: "Employees in possession of price sensitive information are not allowed to communicate the price sensitive information to anyone, including their family or friends, if they know that such persons will or are likely to deal in that Security. It does not matter whether such persons actually deal."

22. As of December 2015, Whelehan also had received training on those compliance policies, including training on insider trading prohibitions. On December 18, 2015, shortly before Whelehan was granted access to Apollo's dataroom, Investment Adviser A specifically notified Whelehan about the NDA, thereby highlighting to him the importance of keeping confidential the information he learned about the ADT acquisition.

**Whelehan Breached His Duty To Investment Adviser A By Tipping Tsai.**

23. Notwithstanding his duty to keep Investment Adviser A's information confidential, Whelehan tipped Tsai about Apollo's affiliates' planned acquisition of ADT, including the approximate acquisition price. For example, on December 22, 2015, one day after Whelehan obtained access to Apollo's dataroom regarding the ADT acquisition, Whelehan sent

an email using his work email address to Tsai's work email address, writing in part: "one of Apollo's portfolio companies would be buying out ADT."

24. Whelehan and Tsai both understood that he told her material, nonpublic information about ADT so that she could trade in advance of the Announcement to obtain illicit insider trading profits. Indeed, after Tsai had purchased ADT stock, in a February 3, 2016 email exchange, she complained to Whelehan about ADT's stock price having dropped below her $29 per share purchase price: "So when is it [ADT's stock price] going to BOUNCE. I wish I had bought it now man. $26!!" He responded, "I told you to average down" and she replied, "I put too much $ in to buy more."

25. As a result of his tip, Whelehan received a personal benefit in the form of a gift to his closest personal friend, his live-in girlfriend and romantic partner, Tsai.

**Tsai's Insider Trading**

26. When Whelehan tipped Tsai, Tsai knew that the information he communicated to her about the ADT acquisition had been obtained improperly, in breach of Whelehan's duty to his employer,a nd that Whelehan conveyed this information to her as a gift, intending that she profit by purchasing ADT securities before the Announcement. At the time, Tsai knew that: (i) Whelehan worked at Investment Adviser A as part of a team considering whether to recommend an investment in the ADT acquisition; (ii) this information was highly confidential; and (iii) Whelehan was prohibited from communicating this information to anyone outside of work.

27. Based on the information she received from Whelehan, on January 22, 2016, Tsai purchased 1,500 shares of ADT stock at $29.00 per share.

28. Also based on the information she received from Whelehan, Tsai recommended to a close relative to purchase ADT stock. Thereafter, on January 22, 2016, Tsai's close relative purchased 343 shares of ADT stock at $29.13 per share.

29. On February 16, 2016, Apollo announced that it would acquire ADT for $42.00 per share. Immediately thereafter, the price of ADT stock increased approximately 48 percent, from $26.87 per share at the close of the previous trading day, to $39.64 per share on Tuesday, February 16, 2016.

30. Consequently, Tsai and her close relative generated illicit profits of approximately $19,500.00 and $4,414.41, respectively.

**Tsai Lied When Confronted About Her Insider Trading.**

31. On February 19, 2016, the chief compliance officer ("CCO") of Tsai's employer, Investment Adviser B, asked Tsai about her January 22, 2016 ADT stock purchase. Initially, Tsai lied, saying that she bought it only because she thought ADT was a good company. However, after the CCO confronted her with her emails showing that Whelehan had tipped her, she admitted that she bought ADT stock because Whelehan had told her about Apollo's planned acquisition of ADT. After she was caught lying, Tsai also admitted to the CCO that she knew that her actions were wrong.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder (Both Defendants)

32. The Commission re-alleges and incorporates by reference paragraphs 1 through 31, as though fully set forth herein.

33. By virtue of the foregoing, from in or about December 2015 through the present, Defendants, in connection with the purchase or sale of securities, by the use of the means or

instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

34. By virtue of the foregoing, Defendants, directly or indirectly, violated, and, unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

WHEREFORE, the Commission respectfully requests that this Court enter Final Judgments:

### I.

Permanently restraining and enjoining the Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering defendant Tsai to disgorge, with prejudgment interest, all illicit trading profits and other ill-gotten gains obtained as a result of the conduct alleged in this Complaint;

**III.**

Ordering Defendants to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l]; and

**IV.**

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
September 22, 2016

By: ______________________

Andrew M. Calamari
Sanjay Wadhwa
Gerald A. Gross
Sheldon Mui
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0138 (Mui)
MuiS@sec.gov